Mario Pittoni, J.
The Superintendent of Meadowbrook Hospital, a county institution, applies for an order permitting and allowing a surgical operation upon a patient, husband of the respondent, on the ground that without such an operation the patient would die within a few hours, that the operation might save his life, that the patient was in a comatose state and could not give his consent, and that his wife refused to give her consent for reasons that she felt justified refusal, but were medically unsound. The order has been signed.
I am convinced by the affidavits of Dr. James F, Collins, the Superintendent, and of Dr. Robert J. Michtom, Assistant Chairman of the Division of Internal Medicine at Meadowbrook Hospital, and also by the hospital records, that if the operation were not performed the patient would die, but that if the operation were performed the patient would have a good chance to live.
Before proceeding to state reasons for this decision, it may be useful to state that this case does not involve a person who for religious or other reasons has refused to seek medical attention. It does involve a patient who sought medical attention from the hospital and placed on the hospital the legal responsibility for his proper care. In its dilemma, not of its own making, the hospital sought legal direction.
*623 Once this patient came into the hospital, it was the responsibility of the hospital and its doctors to treat him. Without a consent, the hospital doctors had the choice of performing the operation or letting him die for want of consent. It cannot reasonably be said that the comatose patient and his wife should or could put the hospital to this impossible choice. Life hung in the balance. In the language of Judge Skelly Weight (Matter of the President etc. of Georgetown Coll., 331 F. 2d 1000, 1009, 1010 [C.A., D.C.], cert. den. 377 U. S. 978): “ Death could have mooted the cause in a matter of minutes, if action were not taken * * *. To refuse to act, only to find later that the law required action, was a risk I was unwilling to accept. I determined to act on the side of life.” (See Schloendorff v. New York Hosp., 211 N. Y. 125, 129, 130; Raleigh Fitkin etc. Hosp. v. Anderson, 42 N. J. 421.)
Matter of Erickson v. Dilgard (44 Misc 2d 27, 28) is not to the contrary because Judge Meyer emphasized ¡that in that case “ the patient has been completely competent at all times while being presented with the decision that he had to make and in the making of the decision that he did.”